IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01639-NYW-TPO

REBECCA FRIEDERICH, and
AIDAN FRIEDERICH,

Plaintiffs,

v.

MONIQUE TRUCKING LLC, a California Limited Liability Company, TOTAL QUALITY LOGISTICS, LLC, an Ohio limited liability company; and SEARING INDUSTRIES WYOMING, INC., a Wyoming corporation,

Defendants.

---

**DEFENDANT TOTAL QUALITY LOGISTICS, LLC'S FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT**

---

Defendant Total Quality Logistics, LLC ("TQL"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiffs Rebecca Friederich and Aidan Friederich's First Amended Complaint ("FAC") [ECF 76] as to TQL.

**Civ. Practice Standard 7.1B**

Pursuant to Civ. Practice Standard 7.1B, counsel for TQL conferred with counsel for Plaintiffs concerning this Rule 12(b) Motion. Counsel for Plaintiffs opposes this Motion and the requested relief.

## I. INTRODUCTION

This case arises from a June 11, 2024 motor vehicle accident ("Accident") on U.S. Highway 285 involving an 18-wheel tractor-trailer truck ("Tractor Trailer") driven by non-party Ignacio Cruz-Mendoza ("Cruz-Mendoza"). Plaintiffs allege they were injured in the Accident. At the time of the Accident, Cruz-Mendoza was acting as an agent and employee of Defendant Monique Trucking LLC ("Monique Trucking"), who was retained to transport an interstate shipment of steel goods ("Steel Load") from Searing Industries, Inc.'s ("Searing") Wyoming facility in Wyoming to the consignee. TQL was the broker for the Steel Load.

Plaintiffs' sole negligence claim against TQL should be dismissed for three principal reasons. ***First***, TQL does not owe a duty to "ascertain[] that the carrier it selected would use a licensed and qualified driver to transport the load," as responsibility for selecting a competent and qualified driver rests exclusively with the carrier. In alleging this duty, Plaintiffs seek to shift the responsibility for *driver*-selection from his employer to TQL without any legal basis. Federal regulations and Colorado law do not support such

an expansive duty. Plaintiffs' negligence claim should be dismissed for failure to satisfy the threshold requirement of identifying a legal duty.

***Second***, assuming a broker like TQL owes a limited duty of care in selecting a *motor carrier*, the FAC lacks plausible facts establishing that TQL breached that duty. There are no material facts regarding what information TQL had regarding Monique Trucking's Federal Motor Carrier Safety Administration ("FMCSA") history and when TQL learned that information. Moreover, by Plaintiffs own admission, the federal agency regulating motor carriers authorized Monique Trucking to continue operating as a carrier at the time of the Accident. Plaintiffs' contention that TQL's selection was unreasonable ignores the fact (confirmed in the FAC) that the federal regulator determined that Monique Trucking was fit to operate, notwithstanding its FMCSA history, and TQL reasonably relied on that determination.

***Third***, Plaintiffs have not pled facts establishing TQL's conduct caused the Accident or their alleged injuries, rather than the other, far more direct causes alleged in the FAC. For Plaintiffs' claim to survive dismissal, Plaintiffs must allege facts showing that TQL's alleged negligence was a substantial factor in causing Plaintiffs' harm. While causation is typically an issue of fact, a court may decide causation as a matter of law where the alleged chain of causation is too attenuated to impose liability. Based on Plaintiffs' allegations, that's the case here. The FAC articulates three other events that were the predominant cause of Plaintiffs' damages. Namely, Monique Trucking's hiring, retention, and selection of Cruz-Mendoza despite his apparent lack of qualifications; Searing and Cruz-Mendoza's failure to properly secure the Steel Load; and Cruz-

Mendoza's excessive speeding and reckless operation of the Tractor Trailer.

## II. FACTUAL BACKGROUND

Plaintiffs filed a Complaint [ECF 1-1] on April 11, 2025 in Jefferson County District Court against Monique Trucking, the carrier responsible for transporting the Steel Load, and its employee Cruz-Mendoza, who was operating Monique Trucking's Tractor Trailer at the time of the Accident. Monique Trucking thereafter removed the case to this Court [ECF 1]. Fourteen months after filing the original Complaint, Plaintiffs filed the First Amended Complaint, adding Searing and TQL as Defendants while dropping all claims against Cruz-Mendoza. (FAC [ECF 76].) In the First Amended Complaint, Plaintiffs assert a variety of negligence claims against Monique Trucking, Searing, and TQL. As to TQL, specifically, Plaintiffs assert a single claim of negligence under the theory of negligent selection. (*See* FAC ¶¶ 119–129.)

As alleged in the FAC, TQL selected a motor carrier, Monique Trucking, to handle transportation of the Steel Load from Searing's facility in Wyoming to the consignee. (FAC ¶¶ 72–74.) Monique Trucking selected its employee, Cruz-Mendoza, as the driver and provided him with a Peterbilt truck that Monique Trucking "owned, leased, or otherwise controlled." (*Id.* ¶¶ 31–33, 99.) Cruz-Mendoza did not possess the Commercial Driver's License required to operate the Tractor Trailer. (*Id.* ¶¶ 50–52.)

On June 11, 2024, Cruz-Mendoza arrived at Searing's facility in Wyoming to pick up the Steel Load. (*Id.* ¶ 13.) Searing's employees provided Cruz-Mendoza with instructions, loaded the Steel Pipe onto the flatbed trailer, checked Cruz-Mendoza's application of tie-down straps, and inspected the Steel Load before permitting Cruz-

Mendoza to leave the facility. (*Id.* ¶¶ 14–20, 26.) Searing and/or Cruz-Mendoza failed to secure the cargo as required by federal regulations. (*Id.* ¶¶ 22–25, 36, 54.)

Later that evening, Cruz-Mendoza was driving the Tractor Trailer on a one-lane highway at a speed of approximately 80 miles per hour, 35 miles above the posted speed limit. (*Id.* ¶¶ 37–39.) Cruz-Mendoza attempted to pass traffic on the left, crossing over a double-yellow line and into the opposite lane of travel. (*Id.* ¶¶ 40–41.) Cruz-Mendoza then lost control of the Tractor Trailer, causing the Steel Load to spill onto cars and the roadway. (*Id.* ¶¶ 42–43.) The Tractor Trailer struck a Subaru Forester, causing that vehicle to rear-end Plaintiffs' Ford Fiesta, which, in turn, caused the Fiesta to veer left, colliding with the passenger side of the trailer. (*Id.* ¶¶ 28, 44–46.) Cruz-Mendoza's negligence, including by operating the Tractor Trailer "in a reckless manner" "directly caused the Incident and Plaintiffs' injuries." (*Id.* ¶¶ 62–63.) "Cruz-Mendoza pled guilty to one count of careless driving resulting in death and three counts of careless driving resulting in injury." (*Id.* ¶ 69.)

Plaintiffs allege Monique Trucking "was negligent in hiring, supervising, and retaining [] Cruz-Mendoza, which was a substantial factor in causing the incident." (*Id.* ¶ 94.) Specifically, Plaintiffs allege Monique Trucking knew or should have known that Cruz-Mendoza did not have a Commercial Driver's License, "was unfit for the job prior to the Incident," and "allowing Ignacio Cruz-Mendoza to operate a semi-trailer was a risk to the public at large." (*Id.* ¶¶ 88–93.) Following the Accident, on July 2, 2024, the FMCSA issued an Imminent Hazard Operations Out-of-Service Order to Monique Trucking, revoking the carrier's operating authority. (*Id.* ¶¶ 79–80.)

Plaintiffs allege TQL was registered as a broker with the FMCSA, and, all relevant times, "TQL was engaged in the business of arranging for the transportation of freight by motor carrier in interstate commerce." (*Id.* ¶¶ 6–7.) According to the FAC, TQL "brokered" the Steel Load and "selected" Monique Trucking as the carrier for the shipment. (*Id.* ¶¶ 72, 74, 121.) Plaintiffs allege that TQL failed to review or disregarded Monique Trucking's FMCSA record, which reflected various violations. (*Id.* ¶¶ 75, 78.) There are no allegations that Monique Trucking lacked operating authority as a motor carrier at the time of selection. (*See generally id.*) Nor are there any allegations that TQL had any advance knowledge of any deficiencies with respect to Monique Trucking or Cruz-Mendoza. (*See generally id.*) Finally, there are also no allegations relating to an employment or agency relationship between TQL and Cruz-Mendoza. (*See generally id.*)

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a "complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Whether a defendant owes a legal duty to the plaintiff is a question of law. *Perreira*

*v. State*, 768 P.2d 1198, 1208 (Colo. 1989). "A negligence claim will fail if it is predicated on circumstances for which the law imposes no duty of care upon the defendant." *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992). "Thus, the initial question in any negligence action is whether the defendant owed a legal duty to protect the plaintiff against injury." *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002).

In determining whether a duty exists, courts consider several factors "including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm, and the consequences of placing this burden on the defendant[.]" *Greenberg v. Perkins*, 845 P.2d 530, 536 (Colo. 1993). "Because no one factor is controlling in itself, the question is essentially one of fairness under contemporary standards—that is, would reasonable persons recognize and agree that a duty of care exist." *Id.*

"While causation generally is a question of fact for a jury, a court may decide the issue as a matter of law where the alleged chain of causation is too attenuated to impose liability." *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1170 (D. Colo. 2001).

## IV. ARGUMENT

### A. Plaintiffs' Claim Fails Because TQL Did Not Owe a Duty to Select, Investigate, Verify, or Supervise Monique Trucking's Chosen Driver.

Plaintiffs' sole claim against TQL is styled as a claim for negligence based on TQL's alleged "negligent selection" of Monique Trucking as the carrier for the Steel Load. (FAC, ¶¶ 119–29.) But Plaintiffs' theory reaches far beyond carrier selection. The gravamen of their theory is that TQL is liable for *Monique Trucking's decision* to assign the transportation of that load to Cruz-Mendoza and for Cruz-Mendoza's conduct while

operating the Tractor Trailer. Specifically, Plaintiffs allege TQL had a duty to "ascertain[] that the carrier it selected would use a licensed and qualified driver," and that TQL failed to exercise reasonable care to determine whether Monique Trucking used licensed and qualified drivers. (*Id.* ¶ 124.) In substance, Plaintiffs seek to hold TQL responsible for Monique Trucking's decision to assign Cruz-Mendoza to the shipment and for the consequences of his alleged unfitness and conduct while operating the Tractor Trailer.

Colorado law does not recognize the duty Plaintiffs seek to impose: a freight broker's duty to investigate, verify, or ensure the qualifications of a particular ***driver selected by an independent motor carrier***. "A negligence claim will fail if it is predicated on circumstances for which the law imposes no duty of care upon the defendant." *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992). The FAC alleges no facts suggesting that TQL selected Cruz-Mendoza, knew he would drive the shipment, retained any right to approve or reject his assignment, or undertook responsibilities for verifying his qualifications. Accordingly, Plaintiffs' claim based on TQL's alleged duty to verify *driver* credentials fails as a matter of law and should be dismissed because Colorado law does not recognize this duty.

Plaintiffs' proposed duty also conflicts with the general rule in Colorado that a defendant has no duty to prevent a third party (here, Monique Trucking and Cruz-Mendoza) from harming another absent a special relationship or other special circumstances giving rise to such duty. *See Davenport v. Cmty. Corr. of Pikes Peak Region, Inc.*, 962 P.2d 963, 967 (Colo. 1998), *as modified on denial of reh'g* (July 27, 1998). The FAC does not allege a special relationship between TQL and Cruz-Mendoza,

nor does it allege that TQL assumed responsibility for his licensing, qualification, supervision, or conduct.

The FAC instead attributes responsibility for Cruz-Mendoza's employment, qualification, assignment, supervision, and operation of the Tractor Trailer to Monique Trucking. Plaintiffs allege:

- Monique Trucking was responsible for "hiring, training, and supervising its employees and agents" (FAC ¶ 87);
- "When the Incident occurred, Ignacio Cruz-Mendoza was employed by Defendant Monique Trucking" (*id.* ¶¶ 32, 82);
- Cruz-Mendoza was acting within the course and scope of his employment with Monique Trucking while transporting the Steel Load (*id.* ¶¶ 33, 82);
- Monique Trucking "owned, leased, or otherwise controlled the operation of the" Tractor Trailer, which Cruz-Mendoza operated on behalf of Monique Trucking (*id.* ¶¶ 31, 99);
- Monique Trucking entrusted Cruz-Mendoza to operate the tractor-trailer and transport the Steel Load (*id.* ¶¶ 98–108); and
- Monique Trucking "permitted and directed [Cruz-Mendoza's] operation of that vehicle in the course of its business" (*id.* ¶ 99).

These allegations identify Monique Trucking—not TQL—as the only entity responsible for selecting, employing, qualifying, training, supervising, and assigning Cruz-Mendoza.

The FAC contains *no* corresponding factual allegations that TQL employed Cruz-Mendoza; owned or controlled the Tractor Trailer; chose Cruz-Mendoza for the transport

or even knew he would be assigned to this shipment; had any authority to accept or reject Cruz-Mendoza's assignment; had any right to hire, fire, train, or supervise Cruz-Mendoza; or directed his operation of the Tractor Trailer. The pleaded facts reflect the distinct functions of broker and motor carrier: TQL allegedly arranged transportation by selecting Monique Trucking, while Monique Trucking allegedly performed the transportation and controlled the selection and operation of its driver and equipment. The federal regulatory framework confirms this important distinction. The Federal Aviation Administration Authorization Act ("FAAAA") defines a broker as "a person, *other than a motor carrier or an employee or agent of a motor carrier*," that sells, provides, or arranges for "transportation *by motor carrier* for compensation." 49 U.S.C. § 13102(2) (emphasis added). By definition, a company cannot wear both hats for the same shipment. *See, e.g.*, *Hodge v. Molson Coors Bev. Co. USA, LLC*, No. 1:24-cv-04735-SDG, 2025 WL 2525860, at *2 (N.D. Ga. July 29, 2025) (the "role of 'broker' under the Act is—by statutory definition—to arrange for the transportation of goods *by someone else*.").[1] Thus, federal regulations effectively bar TQL – a broker registered with the FMCSA – from taking on the role of motor carrier by hiring, supervising, selecting, and controlling the individual driver, as Plaintiffs' claim suggests.

Federal motor carrier regulations expressly assign responsibility for driver qualifications on the driver himself and the motor carrier, *not* the freight broker. *See* 49

[1] *See also, e.g.*, *Morales v. OK Trans, Inc.*, No. 2:19-CV-00094, 2024 WL 1348405 at *2 (S.D. Tex. Mar. 29, 2024) (citing *Tryg Ins. V. C.H. Robinson Worldwide, Inc.*, 767 Fed. App'x 284, 286–87 (3d Cir. 2019)) (stating that a company can only wear one "proverbial hat" regarding a particular shipment).

C.F.R. § 391.11 (directing that "a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified"). The regulation identifies the qualifications that a driver must satisfy, including, as relevant here, the possession of a commercial operator license. *Id.* at § 391.11(b). The carrier who employs and permits the driver to operate the vehicle is thus responsible for ensuring that the driver is qualified.

Plaintiffs identify no authority under Colorado or federal law that would impose a parallel, duplicative duty on the broker to investigate and verify the licensure and qualifications of each individual driver whom a *carrier* could assign for a given shipment. Nor do they plead facts plausibly showing that TQL voluntarily undertook such a responsibility here. The Court should therefore dismiss the claim to the extent Plaintiffs seek to impose liability on TQL for failing to verify Cruz-Mendoza's credentials or ensure that Monique Trucking assigned a qualified driver.

### B. Plaintiffs Do Not Plausibly Allege a Breach of Any Duty to Exercise Reasonable Care in Selecting the Carrier.

Assuming Colorado law recognizes a limited duty for a broker to exercise reasonable care in selecting a motor carrier, the FAC does not plead facts plausibly establishing TQL breached such a duty. Plaintiffs allege TQL selected Monique Trucking as the carrier for the Steel Load and that Monique Trucking's publicly available FMCSA record reflected certain violations between October 2022 through May 2024. (FAC ¶¶ 74–75.) Plaintiffs then allege, without supporting facts, that TQL knew or should have known of that history. (*Id*. ¶ 76.) But the FAC does not allege facts showing why the cited information made the selection unreasonable at the time TQL arranged this particular shipment.

The FAC does not identify when TQL selected Monique Trucking. That omission is material because the reasonableness of TQL's selection must be evaluated based on information available at the time of selection, not in light of later events. The FAC does not allege that each cited violation was publicly available, active, unresolved, or otherwise material when TQL selected Monique Trucking. Nor does it allege facts showing that the cited violations, individually or collectively, rendered Monique Trucking unsuitable for transporting the Steel Load at that time. The FMCSA records Plaintiffs cite also lack important details, such as whether the alleged violations were public at the time of selection, when the past out-of-service order went into effect, whether the order was in effect at the time of selection, and whether the order had any bearing on Monique Trucking's ability to handle the subject shipment. The bare existence of prior violations – without facts addressing the timing, nature, resolution, connection to the shipment, or effect on Monique Trucking's authority – does not plausibly establish that a broker breached a duty by selecting the carrier.

More telling than the past violations is what the FAC does ***not*** allege, i.e.:

- That Monique Trucking lacked operating authority when TQL selected it for this shipment.
- That Monique Trucking had an unsatisfactory FMCSA safety rating at the time of selection.
- That an active order prohibited Monique Trucking from carrying this shipment at the time of selection.
- That any alleged prior violations involved Cruz-Mendoza, specifically.

Plaintiffs' reliance on the July 2, 2024 imminent-hazard out-of-service order does not cure these deficiencies because Plaintiffs then allege "Monique Trucking's operating authority has not been reinstated since the Incident." (*Id.* ¶¶ 79–80.) Thus, Monique Trucking *had* operating authority at the time of the Accident. The federal regulator had access to the same FMCSA safety record and was privy to much more information than TQL regarding the carrier's fitness. And the regulator still authorized Monique Trucking when, as evidenced by the July 2, 2024 out-of-service order, it could have immediately revoked that authorization if it had reason to believe that Monique Trucking was unfit to operate as a carrier.

TQL reasonably relied on the federal regulator's determination that Monique Trucking was authorized to operate as a motor carrier. Plaintiffs' questioning of that decision in hindsight is not sufficient to state a plausible negligence claim against TQL. The FAC simply does not contain sufficient facts to move Plaintiffs' negligent selection theory from possibility to plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**C. The FAC fails to state any plausible facts establishing that TQL caused Plaintiffs' injuries.**

Plaintiffs also fail to allege facts plausibly establishing that TQL's alleged conduct proximately caused their injuries. A conclusory assertion that TQL's conduct "was a proximate cause" Plaintiffs' injuries does not satisfy Rule 8 and Rule 12(b)(6). To survive dismissal, Plaintiffs must allege sufficient facts that, if true, would establish that TQL's actions were a "substantial factor" in causing the plaintiff's harm. *See Roland v. Letgo, Inc.*, No. 22-1456, 2024 WL 372218, at *4 (10th Cir. Feb. 1, 2024) (affirming dismissal of

negligence claim where defendant was not the "substantial factor" in causing deaths and where events other than defendant's negligence appeared predominant) (quoting *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)). "If an event other than the defendant's alleged conduct appears predominant, the defendant's conduct cannot be a substantial factor." *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1170 (D. Colo. 2001).

The FAC does not allege facts connecting TQL's purported failure to review Monique Trucking's FMCSA history to the circumstances of this accident. Plaintiffs do not allege that TQL selected Cruz-Mendoza or knew anything about him, such as his license, qualifications, or driving history. There is nothing to suggest that TQL even knew who Monique Trucking would assign for the transport, or that TQL had any influence over that driver-selection decision. Plaintiffs' main complaint as to TQL is that it did not review or it ignored the FMCSA records, but there is no allegation that those records would have revealed that Cruz-Mendoza would be assigned to the transport.

The FAC instead alleges *Monique Trucking* employed, supervised, and assigned Cruz-Mendoza; owned, leased, or controlled the Peterbilt tractor-trailer; and permitted him to operate it in the course of Monique Trucking's business. (FAC ¶¶ 31–33, 82, 87–94, 99–105.) The FAC alleges *Searing* provided instructions to Cruz-Mendoza regarding how to secure the thousands of pounds of steel; it loaded the steel onto the trailer, checked the tie-downs, and inspected and approved the load before permitting Cruz-Mendoza to leave the facility; and that Searing failed to comply with various federal regulations governing how cargo must be secured. (*Id.* ¶¶ 13–26, 110–16.) The FAC also alleges *Cruz-Mendoza* drove approximately 80 miles per hour in a 45-mile-per-hour zone,

crossed a double-yellow line while attempting to pass traffic, lost control of the tractor-trailer, and collided with multiple vehicles, including Plaintiffs' Ford Fiesta. (*Id.* ¶¶ 35–46.)

These allegations underscore the missing causal connection against TQL. TQL was not involved in any of these events, all of which occurred after TQL completed its limited task of arranging a third-party motor carrier for the transport with operating authority provided by the FMCSA. Considering the entirety of the FAC, the selection of Cruz-Mendoza, the loading and securement of the Steel Load, and Cruz-Mendoza's operation of the tractor-trailer, as alleged in the FAC, were predominant factors that caused the Accident. The Court need not decide at this stage which of these acts or omissions, if any, ultimately caused the subject accident. The defect raised in this Motion is that Plaintiffs failed to plead facts establishing a plausible causal link between TQL's alleged failure to review Monique Trucking's FMCSA history and the specific conduct that Plaintiffs allege caused their injuries. In circumstances such as this, "where the alleged chain of causation is too attenuated to impose liability," the Court may decide the issue as a matter of law. *Castaldo*, 192 F. Supp. 2d at 1170. Even if TQL was negligent in some way, its conduct was not a substantial factor in causing the accident. *Roland*, No. 22-1456, 2024 WL 372218, at *3–4 (affirming trial court's dismissal of negligence claim under Rule 12(b)(6) where defendant's conduct was "insignificant and not a substantial factor" in causing the harm). Accordingly, Plaintiffs' claim against TQL should be dismissed because, as a matter of law, TQL's alleged actions did not cause Plaintiffs' injuries.

## V. **CONCLUSION**

Defendant Total Quality Logistics, LLC requests that the claim by Plaintiffs against it be dismissed with prejudice.

**Certification Regarding Use of Generative Artificial Intelligence for Drafting**:

The undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

DATED: August 24, 2026

TAFT STETTINIUS & HOLLISTER LLP

*s/ Allison R. Burke*
Allison Burke, (#54916)
Theodore J. O'Brien, (#61623)
675 Fifteenth Street, Suite 2300
Denver, CO 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
Email: aburke@taftlaw.com
tobrien@taftlaw.com

*Attorneys for Defendant Total Quality Logistics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2026, a true and correct copy of the foregoing **MOTION TO DISMISS FIRST AMENDED COMPLAINT** was filed and served with the Clerk of the Court using the CM/ECF with service on all counsel of record.

*s/ Jenna Gillespie*
Jenna Gillespie, Legal Assistant